**Jeffrey ROSE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 716, 2011.**

Supreme Court of Delaware.

Submitted: June 27, 2012.
Decided: Aug. 23, 2012.

13. *See Ortiz v. State,* 869 A.2d 285, 290–91 & n. 4 (Del.2005).

Beth Deborah Savitz, Office of the Public Defender, Wilmington, DE, for appellant.

James T. Wakley, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

STEELE, Chief Justice:

A grand jury indicted Rose for (1) Trafficking in Cocaine, (2) Possession with Intent to Deliver, (3) Maintaining a Dwelling for Keeping Controlled Substances, and two other charges. The indictment for Maintaining a Dwelling referenced Counts I and II. The jury acquitted Rose of those two Counts but convicted Rose on the Maintaining a Dwelling charge. Rose argues on appeal that his conviction is based on insufficient evidence because Counts I and II were predicate offenses on which the jury acquitted him. We find no merit to Rose's argument and affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Jeffrey Rose lives at 806 Bennett Street in Wilmington, Delaware. The first floor entrance leads to Rose's apartment, a flight of stairs to Apartment B, and a water access panel within a common vestibule in the house. Apartment B was unoccupied at the time of the incident.

On May 4, 2010, police officers executed a search warrant at Rose's residence. They found 13.7 grams of cocaine behind the siding on the back of the house and 1.7 grams of cocaine packaged in smaller bags behind the water access panel in the common vestibule.

Inside the apartment, officers found a digital scale and numerous empty smaller sized plastic bags in the kitchen. Under the sink, they found a white powdery substance commonly used as a cutting agent for cocaine. In the living room, police found hand held radios, binoculars, and a monitor connected to two exterior surveillance cameras. After completing the search, police arrested Rose.

On June 7, 2010, a grand jury indicted Rose on five Counts: (1) Trafficking in Cocaine; (2) Possession with Intent to Deliver Cocaine; (3) Maintaining a Dwelling for Keeping Controlled Substances; (4) Possession of Ammunition by a Person Prohibited; and (5) Possession of Drug Paraphernalia.

After a trial, the jury acquitted Rose on Counts (1) and (2) and convicted Rose on Counts (3) and (5). The trial judge found Rose guilty of Possession of Ammunition by a Person Prohibited in a separate bench trial. Rose filed a Motion for Judgment of Acquittal under Criminal Rule 29(c) for the Maintaining a Dwelling conviction.[1] The trial judge denied the motion.

---

1. Super. Ct.Crim. R. 29(c) ("If a verdict of guilty is returned the court may on such mo-

## II. STANDARD OF REVIEW

■ To determine whether a conviction was based upon sufficient evidence, "the standard of review is whether the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." [2] We review the evidence in the record *de novo*.[3]

## III. ANALYSIS

### A. The State presented sufficient evidence for a rational jury to find that Rose committed the crime of Maintaining a Dwelling for Keeping Controlled Substances.

■ Rose's sole argument on appeal is that his conviction is based on insufficient evidence. To determine whether the evidence presented by the State is sufficient, we begin with the elements for Maintaining a Dwelling for Keeping Controlled Substances:

(a) It is unlawful for any person:

(5) Knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft or other structure or place which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances or which is used for keeping or delivering them in violation of this chapter.[4]

In making this determination, we review the degree of the defendant's use or control of the dwelling in connection with the possession of drugs.[5] The record must evidence some affirmative activity by the defendant to utilize the dwelling to facilitate the possession, delivery, or use of drugs.[6]

In this case, the State provided testimony that items found in Rose's apartment were drug paraphernalia. Specifically, the search produced a digital scale, small Ziploc bags, and a white powdery substance commonly used as a cutting agent. Detective Andrea Janvier identified the scale as an "AWS digital scale commonly used to weigh drugs for packaging." [7] She testified that pieces of crack cocaine are broken off and measured for sale in $10, $20, and $30 pieces. Detective Janvier also identified "several small Ziploc bags with blue stars on them each containing a tan chunky substance." [8] She explained that "you will see different insignias or different colors on the bags sometimes denoting a particular seller or area of town." [9] Finally, Janvier explained that drugs are cut with other substances to dilute them at each stage of distribution.[10]

The State also provided evidence of the two way radios, video surveillance equipment, and binoculars. Janvier testified that "those are absolutely indicative of street level drug sales." [11] For the hand held radios, one is kept close to the drugs and the other is kept with the lookout.

tion set aside the verdict and enter judgment of acquittal.").

2. *Carter v. State*, 933 A.2d 774, 777 (Del. 2007).

3. *Id.*

4. 16 *Del. C.* § 4755(a) (2010).

5. *Hopkins v. State*, 893 A.2d 922, 932 (Del. 2006).

6. *Priest v. State*, 879 A.2d 575, 576 (Del.2005).

7. App. to Opening Br. A–25.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.* at A–26.

She further testified that if you ride around Bennett's block on a summer day, you will hear little beeps from the walkie talkies that alert people to nearby patrol cars.

Based on items seized in the search, the State provided strong evidence that Rose maintained Apartment A of 806 Bennett Street for keeping cocaine. A *de novo* review of the record satisfies us that sufficient evidence supports the conviction.

### B. The indictment provided Rose with adequate notice and references to the possession charges did not change well settled law that Maintaining a Dwelling does not require actual possession of the drug.

■■■■ As an initial matter, we reaffirm the law that possession is not an element of Maintaining a Dwelling. In *Fisher v. State,* a jury convicted the defendant for Maintaining a Dwelling and Possession of Cocaine.[12] The defendant argued on appeal that the Possession conviction should be vacated because it is a lesser included offense of Maintaining a Dwelling. We held that Possession is not a lesser included offense of Maintaining a Dwelling because each offense requires proof of an element the other does not.[13] In particular, one does not have to maintain a dwelling to be guilty of possession, and to be guilty of maintaining a dwelling, one does not have to possess the controlled substance.

*White v. State* held that the two offenses punish different behaviors.[14] One punishes possession of the drug while the other punishes the use of a dwelling for possessing the drug. In this case, police did not find any cocaine in Rose's apartment because the drugs were hidden in a common vestibule and behind the siding on the back of the house. Because possession is not a predicate offense, the jury could still find sufficient evidence to convict Rose for Maintaining a Dwelling.

Even if possession is not an element of Maintaining a Dwelling, Rose contends that the indictment incorporated the possession charges of Trafficking in Cocaine and Possession with Intent to Distribute as predicate offenses. We first look to the indictment, which charges Jeffrey Rose with the following:

[O]n or about the 4th day of May, 2010, in the County of New Castle, State of Delaware, did knowingly keep a dwelling at 806 Bennett Street, Apt. A, Wilmington, which was used for keeping or delivering controlled substances in violation of Chapter 47, Title 16 of the Delaware Code of 1974, as amended, *as set forth in Count I or Count II of this Indictment.*[15]

Because the jury acquitted Rose of Counts I and II (Trafficking and Possession with Intent to Distribute), Rose argues that he should have been acquitted of Maintaining a Dwelling.

Superior Court Rules of Criminal Procedure 7 provides that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."[16] Furthermore, Rule 7 states that "[a]llegations made in one count may

---

**12.** *Fisher v. State,* 953 A.2d 258, 260 (Del. 2008).

**13.** *Id.*

**14.** *White v. State,* 931 A.2d 438, 2007 WL 2320068, at *3 (Del. Aug. 15, 2007) (TABLE).

**15.** App. to Opening Br. A–9.

**16.** Super. Ct.Crim. R. 7(c).

be incorporated by reference in another count."[17] *Williamson v. State* held that "[t]he purpose of the indictment is to give the accused notice of the offenses with which he is charged."[18] Although Count III referred to Counts I and II, it did not set forth the exclusive theory by which the State could prove its case. The State merely incorporated factual allegations from Counts I and II into Count III. The indictment cannot change the law simply by reference to arguably related offenses. Therefore, the indictment placed Rose on adequate notice of the charges against which he had to defend. We find that Rose reads *Williamson v. State* too broadly. In *Williamson,* the State charged defendant with a specific type of felony murder—killing another person during immediate flight from the felony. The felony murder statute also punishes the killing of another person during the commission of a felony, but the State declined to include this language in the indictment. We held that "having indicted the defendant for a specific facet of the felony murder statute, the State was then required to prove beyond a reasonable doubt the elements of the offense charged."[19] Therefore, the State was bound by the language of the indictment with respect to elements it chooses to specify in the indictment.

■ This case can be distinguished from *Williamson* because Trafficking and Possession with Intent to Distribute are not elements of Maintaining a Dwelling. Unlike *Williamson* where the State specified the element it sought to prove, Rose claims that the State self imposed an entirely new element to the charge of Maintaining a Dwelling. Because an indictment cannot change the law by adding elements to an offense, the indictment did not add predicate offenses to the Maintaining a Dwelling charge.

■ Finally, we note that Rose did not object to jury instructions, which did not require the jury to convict on Counts I or II before considering the balance of the indictment.[20] The jury instructions provided:

> In order to find the defendant guilty of Maintaining a Dwelling, you must find that all of the following elements have been established beyond a reasonable doubt:
>
> One, the defendant kept a dwelling, in this case the State alleges 806 Bennett Street, Apartment A, in Wilmington.
>
> And, two, that apartment—that dwelling [ ] was used by persons using controlled substances in violation of the Uniform Controlled Substances Act; namely, for the purpose of keeping or delivering controlled substances.
>
> Three, the defendant knowingly allowed or permitted such activity at the dwelling.[21]

The instruction is correct as a matter of law, and Rose did not object to the content of the instruction. Therefore, we hold that the indictment provided Rose with adequate notice, that references to Counts I and II merely incorporated factual allegations, and that the references to Counts I and II did not create predicate offenses.

**17.** *Id.*

**18.** *Williamson v. State,* 669 A.2d 95, 98 (Del. 1995).

**19.** *Id.* at 97.

**20.** This is curious because one who reads the indictment as incorporating predicate offenses would have objected to these jury instructions because they do not include conviction on Counts I or II as elements.

**21.** App. to Reply Br. C–15.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.